MAURICE L. MYERS v. NORFOLK AND WESTERN RAILWAY COMPANY

(Filed 22 May, 1913.)

**Interstate Commerce—Federal Employers' Liability Act—Local Employment—Interpretation of Statutes.**

The Federal Employers' Liability Act applies only when the employee of a railroad company receives the injury complained of while in some way engaged on trains connected with interstate commerce, and in this case it is held not to apply where the plaintiff was employed by the defendant railroad company to work on its roadbed, and was injured while obeying an order of his superior in boarding an interstate train to go to a near-by point, also situated within the State, for mail.

APPEAL by defendant from *Daniels, J.,* at January Term, 1913, of WILKES.

Civil action for damages for a personal injury to a railroad employee, tried upon these issues:

1. Was the plaintiff injured by the negligence of the defendant? A. Yes.

2. Did the plaintiff by his own negligence contribute to his own injury? A. Yes.

3. Did the plaintiff execute the release offered in evidence by the defendant? A. Yes.

4. Was the plaintiff induced to sign the release by the fraud and deceit of the defendant's agent? A. Yes (but set aside on motion of defendant).

5. Was the plaintiff 21 years of age when he signed the receipt and has since ratified it? A. No.

6. What damage is the plaintiff entitled to recover of the defendant? A. $1,000.

From the judgment rendered, the defendant appealed.

*Charles B. Spicer for plaintiff.*
*Watson, Buxton & Watson for defendant.*

BROWN, J. This action was tried under the act of Congress known as the Federal Employers' Liability Act.

The evidence tended to prove these facts: Plaintiff, a resident of Wilkes County, North Carolina, was employed by the defendant company, and in February, 1911, was working in West Virginia as a hand on an extra force on a work train. His business was to assist in surfacing up the roadbed, straighten out freight wrecks, and when there were slides, to clean them up. He was working under Mr. Shaw, general foreman of the work train, and under Mr. Lineberry, the assistant foreman. On Sunday, 12 February, 1911, the plaintiff was not working, but some time during the afternoon he attempted to catch a freight train which was passing the camp, and running from 6 to 8 miles an hour. The plaintiff claimed he was ordered by the foreman to catch this moving train to go for the mail. He failed to catch the train, and fell under it and had his leg cut off.

According to the plaintiff's own evidence, we do not think he was engaged in interstate commerce, and therefore his action was erroneously tried under the act of Congress. He testifies that he was engaged solely in local repair work on the track in West Virginia as a workman on a work train.

At the time of his injury he was not engaged in any service whatever for the defendant. On Sunday, 12 February, the work-train hands were in camp, when plaintiff was told by Lineberry to catch a passing freight train and go to Naugatuck for the mail for the camp.

One of the essentials is that the employee when injured must be engaged in an act of interstate commerce. Horton was engineer of a train engaged in interstate commerce when injured, and so was Fleming, 160 N. C., 196.

In *Zachary's case,* 156 N. C., 496, we. held that the act of
Congress applies only to a carrier by rail while engaged in in-
terstate commerce, and only to an employee suffering injury
while he is employed by such carrier in such commerce. In
that case we said:

"We do not think the Federal act applies, for the reason that
the deceased at the time when killed was not employed by the
Southern Railway, the lessee, in interstate commerce. At the
time he was killed deceased was not engaged in an act of any
kind of commerce. He was on the way to his boarding-house
for a purpose entirely personal to himself and not on the car-
rier's business."

This case is directly supported by Federal authorities. *Lam-
phere v. Oregon R. and No. Co.,* 193 Fed. In this case it is
held "that the employee at the time of the injury must have
been employed in such interstate commerce."

It is also held that an extra conductor in the employ of a
railroad company, directed, on reporting for work, to ride to
another point within the same State for service on a work train
working in that State, and who was injured while proceeding
to his work train, was not at the time of the injury engaged in
interstate commerce within the Employers' Liability Act. *Feas-
ter v. R. R.,* 197 Fed., 581; *Pederson v. R. R.,* 197 Fed., 537.
In this last case the subject is fully discussed by *Buffington,
Circuit Judge,* and it is held that "the act applies only to such
employees who at the time of the injury have a real and sub-
stantial connection with an act of interstate transportation,"
citing *Employers' Liability cases,* 207 U. S., 463; *Adair v.
U. S.,* 208 U. S., 161.

On the occasion when injured the plaintiff was not engaged
in any kind of commerce. He had been directed by Lineberry
to go to Naugatuck for the mail for the working force, and was
injured while endeavoring to board a passing freight train for
that purpose and no other.

It is contended that according to plaintiff's evidence, on the
occasion when injured, he was not engaged in any act of serv-
ice for defendant, and if Lineberry or Shaw directed him to
catch the freight and go for the mail for the camp, they were

not acting within the scope of their authority or in furtherance of the defendant's work. It is unnecessary to decide this now. Another trial may develop the facts more fully.

New trial.